**/// MIDLAND MORTGAGE**
*A division of MidFirst Bank*

Loan Number: 59437017
6756 JONESTOWN RD
HARRISBURG PENNSYLVANIA 17112

AUGUST 24, 2026

JUDE MABU
6756 JONESTOWN RD
HARRISBURG PA 17112

# Read, sign and return.

Please return the enclosed documents to us by
SEPTEMBER 10, 2026

Dear Homeowner:

Congratulations; you are now ready to complete the enclosed Partial Claim loan documents. The HUD Partial Claim is an interest-free loan from HUD that does not generally become due until the earlier of: payoff or refinance of the existing FHA insured loan ("Primary Loan"); sale of the property; maturity of the Primary Loan or the date of its acceleration; or when the Primary Loan is no longer insured by HUD. The Partial Claim loan is secured by a subordinate lien on the property.

Enclosed are two copies of the HUD Partial Claim Subordinate Note and a security instrument for your review and signature. To complete the permanent agreement, you must make all trial period payments successfully, and all borrowers must sign the documents according to the enclosed instructions and return both fully signed originals of the HUD Partial Claim documents at the address listed on the instructions. By signing the attached documents, you are acknowledging you have read, understand and agree to the terms of the HUD Partial Claim, including the terms outlined above. This Partial Claim will be in the amount of **$21,589.09**.

**The signed documents must be returned by SEPTEMBER 10, 2026.**

To accept the plan and reinstate the loan, you must return all required and properly signed documents on or before the document return-by date.

If we receive documents after the document return-by date and by the 15th of the first month of the plan, you must also make the first plan payment within the month it is due. If we receive the required documents on or after the 16th of the first month of the plan, you must make both the first plan payment in its due month and the second plan payment on or before the 15th of its due month. Failure to meet the above requirements within the deadlines will result in denial of the plan.

If the plan is not approved, the collection and/or foreclosure process may proceed without further notice. Please read the plan documents carefully, make sure you understand the modified terms, and contact us with any questions.

**As a reminder, the next payment on the existing FHA insured mortgage in the amount of $3,150.46 is due on or before OCTOBER 1, 2026.** By signing this agreement, you are confirming you have the ability to resume making on-time Mortgage Payments. You are also confirming you understand you may only be eligible to receive one permanent home retention option (Partial Claim, Loan Modification, Combination Loan Modification and Partial Claim, or Payment Supplement) per 24-month period except in the case of a natural disaster.

Upon full execution of your plan documents and after your loan is brought current, a copy of the signed plan

documents will be available to view, download, and print on MyMidlandMortgage.com, in the Statements & Documents section. If you prefer to receive the documents by mail or have trouble accessing the documents online, please call 800-552-3000 and we will send you a copy.

If you have any questions, please call the number above Monday – Friday 8 a.m. - 7 p.m. or Saturday 9 a.m. - 1 p.m. Central time.

Sincerely,

Midland Mortgage, a division of MidFirst Bank

**Notice:** If your loan was in default when MidFirst Bank obtained it, and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to inform you that this communication is from a debt collector. If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust, or you are currently in bankruptcy under the protection of an automatic stay, this letter is not an attempt to collect the debt from you personally and is for informational purposes only.

**Notice to Connecticut and North Carolina Residents:** The purpose of this communication is to collect a debt.

**Notice to Vermont Residents:** This is an attempt to collect a debt and any information obtained will be used for that purpose.

**/// MIDLAND MORTGAGE**
*A division of MidFirst Bank*

Loan Number: 59437017
6756 JONESTOWN RD
HARRISBURG PENNSYLVANIA 17112

# Read These Instructions Before Signing Your Plan Documents

## Helpful tips and reminders:

- ✓ Please follow these directions exactly or your mortgage assistance plan could be delayed!
- ✓ Two sets of the Partial Claim Agreement are enclosed.
  Both will be returned to Midland using the mailing information below.
- ✓ USE BLACK INK ONLY, or your plan documents may be delayed or rejected.
- ✓ Do not change the documents in any way. Please call 800-552-3000 with any questions about the documents or the details of your mortgage assistance plan.

### Instructions for document signers:

- ☐ Sign all copies of the Partial Claim in front of a notary.
- ☐ Sign names in black ink on all sets of documents exactly as they appear - don't forget middle initials, middle names, Jr./Sr., etc.
- ☐ Sign both sets of documents in all places where names appear.

### Instructions for the notary:

- ☐ Use black ink for the notary stamp and signature.
- ☐ Complete the date of acknowledgement.
- ☐ List your notary expiration date.
- ☐ Include your notary stamp and/or seal on the acknowledgement pages.
- ☐ Ensure the notary seal is in a blank space and does not cover text or signatures.

*<u>By Overnight Courier (UPS, FedEx, Etc.)</u>*
Midland Mortgage - A Division of MidFirst Bank
Attn: MAC
999 N.W. Grand Boulevard, Suite 100
Oklahoma City, OK 73118

*<u>By US Mail</u>*
Midland Mortgage - A Division of MidFirst Bank
Attn: MAC
P.O. Box 268806
Oklahoma City, OK 73126-8806

FHA Case No.: 4466022314703

# PROMISSORY NOTE

| | | |
|---|---|---|
| **AUGUST 24, 2026** | **HARRISBURG** | **PENNSYLVANIA** |
| [Date] | [City] | [State] |

**6756 JONESTOWN RD, HARRISBURG, PENNSYLVANIA 17112**
[Property Address]

**1. PARTIES.**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **TWENTY-ONE THOUSAND FIVE HUNDRED EIGHTY-NINE DOLLARS AND 9 CENTS** (U.S. **$21,589.09**), to the order of the Lender.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses, which might result if Borrower defaults under this Note.

**4. PAYMENT OF PARTIAL CLAIM**

**(A) Time.**

HUD will not require payment on the Partial Claim until the first of the following events occurs:

(i) The maturity of the Mortgage, **APRIL 1, 2054**;

(ii) The sale or transfer of the Property; except for non-borrowers who acquired title through an exempted transfer;

(iii) The assumption of the Mortgage except for non-borrowers who acquired title through an exempted transfer;

(iv) The Payoff of the Mortgage, except that HUD will agree to subordinate the Partial Claim Note to a Streamline Refinance; or

(v) If provided for under the Partial Claim Note, the termination of FHA insurance.

HUD does not prohibit partial or total payment on the Partial Claim at any time prior to the due date for the Partial Claim.

**(B) Place.**

Payment shall be made at the **Office of Housing FHA-Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 Seventh Street, SW, Washington, DC 20410** or any such other place as Lender may designate in writing by notice to Borrower.

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights or presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**7. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

**8.** Notwithstanding the foregoing or any other provisions contained herein, if personal liability with respect to any amounts payable under the primary Note securing the Property has been discharged in bankruptcy, Borrower and Lender understand and agree that nothing contained herein with respect to any amounts payable under the Subordinate Note, will be construed to impose personal liability to repay any such obligation in violation of such discharge. Borrower and Lender further understand and agree that to the extent that such personal liability with respect to any amounts payable under the primary Note has been discharged in bankruptcy, Borrower is entering into the Subordinate Note voluntarily for the benefits to be obtained thereby and not as an affirmation of the debt evidenced by the primary Note, and that the Subordinate Note, or any actions taken by the Lender in relation to the Subordinate Note, does not constitute a demand for payment or any attempt to collect any such previously discharged obligation.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

**JUDE MABU** 09/08/2026 **Date**

This Document Prepared By:
**YUDOSHIA ROLLERSON**
**MIDFIRST BANK, A FEDERALLY**
**CHARTERED SAVINGS ASSOCIATION**
**501 N.W. GRAND BLVD**
**OKLAHOMA CITY, OK 73118**

When Recorded Mail To:
**FIRST AMERICAN TITLE**
**DTO REC., MAIL CODE: 4002**
**4795 REGENT BLVD**
**IRVING, TX 75063**

**Tax/Parcel #: 35-034-143**
_______________ [Space Above This Line for Recording Data] _______________

**FHA Case No.: 4466022314703**
**Loan No: (scan barcode)**

# PARTIAL CLAIM MORTGAGE

THIS SUBORDINATE MORTGAGE ("Security Instrument") is given on **AUGUST 24, 2026**. The mortgagor is **JUDE MABU** ("Borrower"), whose address is **6756 JONESTOWN RD, HARRISBURG, PENNSYLVANIA 17112**. This Security Instrument is given to the **Secretary of Housing and Urban Development**, whose address is **451 Seventh Street SW, Washington, DC 20410** ("Lender"). Borrower owes Lender the principal sum of **TWENTY-ONE THOUSAND FIVE HUNDRED EIGHTY-NINE DOLLARS AND 9 CENTS** (U.S. **$21,589.09**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **APRIL 1, 2054**.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the

Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale, the following described property located in the County of **DAUPHIN**, State of **PENNSYLVANIA**:

which has the address of, **6756 JONESTOWN RD, HARRISBURG, PENNSYLVANIA 17112** (herein "Property Address");

**LEGAL DESCRIPTION: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Tax Parcel No. **35-034-143**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

**UNIFORM COVENANTS.**

**1. Payment of Principal.** Borrower **shall** pay when due the principal of the debt evidenced by the Note.

**2. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**3. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and

assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**4. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street SW, Washington, DC 20410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**5. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**6. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Borrower and Lender further covenant and agree as follows:

**NON-UNIFORM COVENANTS.**

**7. Remedies.**

**(a) Notice of Default.** Lender will give a notice of default to Borrower following Borrower's breach of any covenant or agreement in this Security Instrument. The notice will specify, in addition to any information required by applicable law: (i) the default; (ii) the action required to cure the default; (iii) that failure to cure the default on or before the date specified in the notice may result in foreclosure by judicial proceeding and sale of the Property; and (iv) Borrower's right to deny in the foreclosure proceeding the existence of a default or to assert any other defense of Borrower to foreclosure.

**(b) Foreclosure; Expenses.** If the default is not cured as specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without

further demand and may foreclose this Security Instrument by judicial proceeding or in accordance with paragraph 7(c). To the extent allowed by applicable law, Lender will be entitled to collect all expenses incurred in pursuing its remedies, including but not limited to: (i) reasonable attorneys' fees and costs; and (ii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument.

**(c) Secretary's Remedies.** Notwithstanding the foregoing paragraphs (a)-(b), if the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence will deprive the Secretary of any rights otherwise available to a lender under this section 7 or applicable law.

**8. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower will:

(a) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(b) permit the collection and application of miscellaneous proceeds as required by this Security Instrument; and

(c) pay any collection expenses under this Security Instrument.

"Survival Event" means any of the following:

(aa) any default described in the Subordinate Note;

(bb) Lender requiring Borrower to pay immediately the full amount of principal that Borrower owes under the Subordinate Note;

(cc) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Subordinate Note and in this Security Instrument;

(dd) the maturity date as defined in paragraph 4 of the Subordinate Note;

(ee) the entry of any judgment against Borrower under the Subordinate Note; and

(ff) the entry of any judgment under this Security Instrument.

**9. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed will terminate and become void. After such occurrence, Lender will discharge and satisfy this Security Instrument. Borrower will pay any recordation costs associated with such discharge and satisfaction. Lender may charge Borrower a fee for

releasing the Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**10. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**11.** Notwithstanding the foregoing or any other provisions contained herein, if personal liability with respect to any amounts payable under the primary Note securing the Property has been discharged in bankruptcy, Borrower and Lender understand and agree that nothing contained herein with respect to any amounts payable under the Subordinate Note, will be construed to impose personal liability to repay any such obligation in violation of such discharge. Borrower and Lender further understand and agree that to the extent that such personal liability with respect to any amounts payable under the primary Note has been discharged in bankruptcy, Borrower is entering into the Subordinate Note voluntarily for the benefits to be obtained thereby and not as an affirmation of the debt evidenced by the primary Note, and that the Subordinate Note, or any actions taken by the Lender in relation to the Subordinate Note, does not constitute a demand for payment or any attempt to collect any such previously discharged obligation.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

[signature] _09/08/2026_

Borrower: **JUDE MABU** **Date**

__________________[Space Below This Line for Acknowledgments]________________

**BORROWER ACKNOWLEDGMENT**

State of PENNSYLVANIA
County of _Cumberland_

This record was acknowledged before me on _September 8, 2026_ (date) by JUDE MABU (name(s) of individual(s)).

________This notarial act involved the use of communication technology.

[signature] (Stamp)

Signature of notarial officer

Commonwealth of Pennsylvania - Notary Seal
Amber M. Knobl, Notary Public
Cumberland County
My commission expires July 25, 2027
Commission number 1437458
Member, Pennsylvania Association of Notaries

_Amber M. Knobl, Notary_
Printed Name and Title of office

My commission expires: _July 25, 2027_

## EXHIBIT A

**BORROWER(S): JUDE MABU**

**LOAN NUMBER: (scan barcode)**

**LEGAL DESCRIPTION:**

**THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE TOWNSHIP OF LOWER PAXTON, COUNTY OF DAUPHIN, STATE OF PENNSYLVANIA:**

**BEGINNING AT A POINT ON THE NORTHERN DEDICATED RIGHT-OF-WAY LINE OF JONESTOWN ROAD, T-601 (30 FEET FROM THE CENTERLINE) AT THE DIVIDING LINE BETWEEN LOTS NO. 4 AND NO. 5 AS SHOWN ON THE HEREINAFTER MENTIONED PLAN; THENCE ALONG THE DIVIDING LINE BETWEEN LOTS NO. 4 AND NO. 5 NORTH TWENTY-TWO DEGREES, TWENTY-TWO MINUTES, ZERO SECONDS WEST (N 22 DEGREES 22 MINUTES 00 SECONDS W) A DISTANCE TWO HUNDRED TWENTY-FIVE AND FIFTY-FIVE HUNDREDTH FEET (225.55 FEET) TO A POINT AT THE DIVIDING LINE BETWEEN LOTS NO. 4, NO. 5 AND ON THE LINE OF LOT NO. 1; THENCE ALONG THE DIVIDING LINE BETWEEN LOTS NO. 1 AND NO. 5 NORTH EIGHTY-SIX DEGREES, FIFTY-THREE MINUTES, FORTY-FIVE SECONDS EAST (N 86 DEGREES 53 MINUTES 45 SECONDS E) A DISTANCE OF NINETY-NINE AND NINETY-SEVEN HUNDREDTH FEET (99.97 FEET) TO A POINT; THENCE CONTINUING ALONG THE SAME SOUTH FIFTY-NINE DEGREES, FIFTY-THREE MINUTES, THIRTY SECONDS EAST (S 59 DEGREES 53 MINUTES 30 SECONDS E) A DISTANCE OF EIGHTY-EIGHT AND SIXTY HUNDREDTH FEET (88.60 FEET) TO A POINT; THENCE CONTINUING ALONG THE SAME NORTH SEVENTY-FIVE DEGREES, FIFTY-SEVEN MINUTES, TWENTY SECONDS EAST (N 75 DEGREES 57 MINUTES 20 SECONDS E) A DISTANCE OF ONE HUNDRED THIRTY-EIGHT AND TWELVE HUNDREDTH FEET (138.12 FEET) TO A POINT AT THE DIVIDING LINE BETWEEN LOTS NO. 1 AND NO. 5; THENCE ALONG THE DIVIDING LINE BETWEEN LOTS NO. 1 AND NO. 5 SOUTH TWENTY-TWO DEGREES, TWENTY-TWO MINUTES, ZERO SECONDS EAST (S 22 DEGREES 22 MINUTES 0 SECONDS E) A DISTANCE OF ONE HUNDRED TWO AND THIRTY-ONE HUNDREDTH FEET (102.31 FEET) TO A POINT ON THE NORTHERN DEDICATED RIGHT-OF-WAY LINE OF JONESTOWN ROAD, T-601; THENCE ALONG THE NORTHERN DEDICATED RIGHT-OF-WAY LINE OF JONESTOWN ROAD, T-601 SOUTH SIXTY-SEVEN DEGREES, THIRTY-EIGHT MINUTES, ZERO SECONDS WEST (S 67 DEGREES 38 MINUTES 00 SECONDS W) A**

**DISTANCE OF TWO HUNDRED EIGHT-FIVE FEET (285.00 FEET) TO A POINT, THE PLACE OF BEGINNING. CONTAINING 1.0003 ACRES.**

**BEING LOT NO. 5 AS SHOWN ON THE FINAL SUBDIVISION PLAN FOR HALL DEVELOPMENT CORPORATION. SAID PLAN BEING RECORDED IN THE OFFICE OF THE RECORDER OF DEEDS OF AND FOR DAUPHIN COUNTY IN PLAN BOOK U, VOLUME 8, PAGE 44.**

**SUBJECT TO A THIRTY FOOT (30') SANITARY SEWER EASEMENT AND CONDITIONS AS SHOWN ON THE ABOVE REFERENCED PLAN.**

**Source of Title: INSTRUMENT NO. 20240005261**

**ALSO KNOWN AS: 6756 JONESTOWN RD, HARRISBURG, PENNSYLVANIA 17112**

Date: **AUGUST 24, 2026**
Loan Number: **(scan barcode)**
Lender: **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

Borrower: **JUDE MABU**

Property Address: **6756 JONESTOWN RD, HARRISBURG, PENNSYLVANIA 17112**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

[signature] 09/08/2026

Borrower Date

**JUDE MABU**

Date: **AUGUST 24, 2026**
Loan Number: **(scan barcode)**
Lender: **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

Borrower: **JUDE MABU**

Property Address: **6756 JONESTOWN RD, HARRISBURG, PENNSYLVANIA 17112**

# ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the replacement or correction of, any lost, misplaced, misstated or inaccurate document(s) or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

[signature] 09/08/2026

**JUDE MABU** Date

# CERTIFICATE OF RESIDENCE

## TITLE OF DOCUMENT
**PARTIAL CLAIM MORTGAGE**

## BETWEEN:
**JUDE MABU** (assignor/Mortgagor/grantor)

## AND:
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT**
(assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within named Mortgagee is:
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT**
**451 SEVENTH STREET SW, WASHINGTON, DC 20410**

*By:* ________________________________

*Print Name:* ____________________________

*Title:* ____________________________

3760520-2